UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-54CB,<br><br>               Plaintiff,<br>    v.<br><br>AMIR A. KHOSH; SFR INVESTMENTS POOL 1, LLC; ARBOR PARK COMMUNITY ASSOCIATION; DOE INDIVIDUALS I-X, inclusive, and ROE CORPORATIONS I-X, inclusive,<br><br>               Defendants. | Case No. 2:17-cv-00957-MMD-PAL<br><br>AMENDED ORDER[1] |
| SFR INVESTMENTS POOL 1, LLC,<br><br>               Counter/Crossclaimant,<br>    v.<br><br>THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-54CB; ACCREDITED HOME LENDERS, INC.; AMIR A. KHOSH, an individual,<br><br>               Counter/Crossdefendants. | |

**I.   SUMMARY**

This dispute arises from the foreclosure sale ("HOA Sale") of real property located at 5409 Orchid Lilly Court, North Las Vegas, NV 89031 ("Property") to satisfy a homeowners' association lien. Two motions are currently pending before the Court. In the

///

---

[1] The order is amended to correct identical clerical errors previously located at page 7 line 15 and page 8 line 12.

first motion, Plaintiff/Counter-Defendant The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-54CB, Mortgage Pass-Through Certificates, Series 2005-54CB ("BoNYM"), moves for summary judgment on its claim that its deed of trust ("DOT") survived the HOA Sale. (ECF No. 62.) In the second motion, Counterclaimant/Cross-Claimant SFR Investments Pool 1, LLC ("SFR") moves for summary judgment on BoNYM's claims and on its counterclaims for declaratory relief/quiet title and injunction against BoNYM, and Cross-Defendants Amir A. Khosh ("Khosh" or "Borrower"), and Accredited Home Lenders, Inc. ("AHL").[2] (ECF No. 64; ECF No. 37 at 11–18.) For the reasons stated below, the Court grants SFR's motion for summary judgment ("MSJ") and therefore denies BoNYM's MSJ.[3]

**II.   BACKGROUND**

The following facts are undisputed unless otherwise indicated.[4]

Amir A. Khosh ("Borrower") financed the purchase of the Property within the HOA with a $256,500.00 loan ("Loan") from Quicken Loans Inc. ("Quicken") in July 2005. (ECF No. 62-1.) The Loan was secured by a first deed of trust ("DOT") and Mortgage Electronic Registration Systems, Inc. ("MERS") was the named beneficiary of the DOT. (*See id.*) MERS as nominee for Quicken assigned the DOT to BoNYM in an assignment recorded on March 25, 2011. (ECF Nos. 62-2; 69-2.) BoNYM is the current beneficiary under the DOT. (*Id.*; ECF No. 62-3.)

Borrower failed to pay HOA assessments, and the HOA recorded the following notices through its agent, Absolute Collection Services, LLC ("Absolute"): (1) notice of

///

---

[2]In addition to the parties' MSJs, the Court has reviewed their respective responses (ECF No. 68, 69) and replies (ECF Nos. 70, 71).

[3]The Clerk of Court entered default against Khosh and AHL because both were served with summons by SFR and failed to respond. (ECF Nos. 49, 65.) The Clerk also entered default against the HOA, Arbor Park Community Association. (ECF No. 67.)

[4]The Court takes judicial notice of facts derived from the publicly available records of the Clark County Recorder. *See, e.g.*, *Disable Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004) (explaining a court may consider a government agency's records and other public records).

delinquent assessment lien on September 22, 2011 ("First NDAL") (ECF No. 62-4); and (2) notice of default and election to sell on January 6, 2012 (ECF No. 62-5).

On February 2, 2012, Bank of America, N.A. ("BANA")—acting as BoNYM's loan servicer—sent a letter to Absolute through its agent (the law firm of Miles, Bauer, Bergstrom & Winters, LLP ("Miles Bauer")) offering to pay the superpriority amount of the HOA's lien. (ECF No. 62-7 at 3–5.) Absolute responded stating: "We recognize your client's position as the first mortgage company as the senior lien holder. Should you provide us with a recorded Notice of Default or Notice of Sale, we will hold our action so your client may proceed." (*Id.* at 6.) BANA thereafter paid the entire lien amount owed at the time. (ECF No. 62-8 at 7.)

The HOA recorded a second notice of delinquent assessment lien against the Property on January 10, 2013 ("Second NDAL"), providing Borrower owed $1,286.22 in overdue assessments and other amounts. (ECF No. 62-9.) On April 4, 2013, the HOA recorded a second notice of default and election to sale against the Property, alleging Borrower owed $2,120.52. (ECF No. 62-10.) The HOA recorded a notice of trustee's sale against the Property on August 2, 2013, noting Borrower owed an estimated $3,987.44 (ECF No. 62-11.) SFR purchased the Property at HOA Sale on September 17, 2013, for $14,000.00. (ECF No. 62-12.)[5]

In its First Amended Complaint ("FAC"), BoNYM asserted the following claims: (1) declaratory judgment against all Defendants that the DOT encumbers the Property, or alternatively that the HOA Sale was void; (2) declaratory relief against all Defendants that BoNYM may judicially foreclose under the DOT; (3) judicial foreclosure against all Defendants; and (4) in the alternative for breach of contract against Borrower. (ECF No.

///

---

[5]For the purpose of brevity, the Court refers to the events following the first notice of delinquent assessment lien on September 22, 2011, but preceding the second notice of delinquent assessment lien against the Property on January 10, 2013, collectively as First Foreclosure Proceedings. The events following the second notice are referred to as the Second Foreclosure Proceedings.

12.) As noted, SFR asserts counterclaims for declaratory relief/quiet title and preliminary/permanent injunctive relief. (ECF No. 37 at 11–18.)

## III. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. Moreover, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

///

///

## IV. DISCUSSION

As pertinent to BoNYM's MSJ, the Court deems the FAC as chiefly seeking to quiet title, although BoNYM describes the claims as declaratory relief/judgment claims. As the parties note, declaratory judgment or relief is not a standalone claim. (ECF No. 64 at 8; ECF No. 71 at 2–5.). The FAC also supports that BoNYM really intends to have the Court quiet title in its favor. (*See, e.g.*, ECF No. 22 at 10 ("Equally, to the extent the Court determines a five year statute of limitations exists to quiet title, the Court should find that SFR's failure to quiet title precludes it from ever quieting title in its name or otherwise extinguishing the deed of trust, thereby confirming BNY's right to foreclose.").)

The Court begins by addressing SFR's contention that BoNYM lacks Article III and prudential standing and its claims and defenses are time-barred. (ECF No. 64 at 7–10, 15–17; ECF No. 69 at 4.) The Court will then address the merits of the parties' arguments. Upon considering these matters, the Court finds that BoNYM's claims and defenses are not time-barred but nonetheless BoNYM's claims fail on the merits.

### A. Standing

Among BoNYM's arguments on the merits, discussed *infra*, is its contention that NRS § 116.3116 is unconstitutional. SFR argues that BoNYM lacks Article III and prudential standing to challenge NRS § 116.3116 on due process grounds because BoNYM received actual notice of the HOA Sale and thus cannot claim it was injured and because BoNYM did not produce, *inter alia*, the original wet-ink promissory note and evidence of payment for the DOT. (ECF No. 64 at 15–17; ECF No. 69 at 4–7.) BoNYM counters that it has standing as the record beneficiary of the DOT to establish its interest in the Property and seek quiet title/declaratory relief. (ECF No. 71 at 6–7.)

The Court agrees with BoNYM. First, the Court has previously found meritless the same Article III standing-argument SFR makes here. *See, e.g.*, *PennyMac Loan Serv. LLC v. Townhouse Greens Ass'n, Inc.*, No. 3:16-cv-00504-MMD-VPC, 2018 WL 772089, at \*\*2–3 (D. Nev. Feb. 6, 2018) (finding standing because it is alleged that there is injury "by the extinguishment of the DOT and a decision from this Court quieting title to it would

redress that injury"). Second, prudential standing exists were BoNYM is the current recorder beneficiary of the DOT and SFR has produced no evidence to the contrary. *See, e.g.*, *Freedom Mortg. Corp. v. Las Vegas Dev. Grp., LLC*, 106 F. Supp. 3d 1174, 1179 (D. Nev. 2015) (internal quotation and citation omitted) (explaining that prudential standing "encompasses the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked"). It is clear that BoNYM has the right to bring action disputing whether its DOT was extinguished by the HOA Sale.

### B.  Statute of Limitations

SFR argues that BoNYM's claims are barred by a three-year statute of limitations. (ECF No. 64 at 7–10; ECF No. 69 at 4.) BoNYM counters that its defenses and particularly its request for declaratory relief are not causes of actions and therefore not subject to a statute of limitations. (ECF No. 71 at 2–6; ECF No. 68 at 2–5.) BoNYM further argues, *inter alia*, that at minimum the five-year statute of limitations under NRS § 11.070 or § 11.080 applies because its claims are founded upon title to real property. (*Id.*)

The Court agrees with BoNYM that this action is governed by the five-year statute of limitations. BoNYM specifically seeks summary judgment on its claim that the DOT survived the HOA Sale. (ECF No. 62 at 2.) BoNYM clarifies in its reply that its claims do not rest on alleged breach of NRS § 116.3116 but connected to its request for declaratory relief and to quiet title in its favor. (ECF No. 71 at 2–6.) Thus, this Court's prior conclusion that a quiet title/declaratory relief action is subject to a five-year statute of limitations applies here. *See, e.g.*, *U.S. Bank Home Mortg. v. Jensen*, No. 3:17-cv-0603-MMD-VPC, 2018 WL 3078753, at *4 (D. Nev. June 20, 2018); *Goldsmith Enters., LLC v. U.S. Bank, N.A.*, No. 2:15-cv-00991-MMD-PAL, 2017 WL 4172266, at *3 (D. Nev. Sept. 20, 2017) (citation omitted).

The Court now turns to the merits of the parties' argument.

///

### C. The Merits

SFR argues that it is entitled to summary judgment because the HOA Sale extinguished BoNYM's DOT. (ECF No. 64 at 17.) BoNYM argues, *inter alia*, that SFR is not entitled to summary judgment because (1) it was excused from providing tender to preserve the DOT; (2) NRS § 116.3116 is unconstitutional—facially and as applied; (3) equitable relief is warranted to set aside or reform the HOA Sale. (ECF No. 62.) The Court finds BoNYM's arguments unpersuasive and agrees with SFR that the HOA Sale extinguished BoNYM's DOT. *See SFR Invs. Pool 1 v. U.S. Bank* ("*SFR I*"), 334 P.3d 408, 413 (2014) (holding that foreclosure sale on the superpriority portion of an HOA lien extinguishes all prior security interests).[6]

#### 1. Tender

BoNYM essentially argues that it is entitled to summary judgment because it was excused from tendering payment as to the Second Assessment Proceedings because such would be futile in light of the HOA's prior representations. (ECF No. 62 at 4–6.) The Court disagrees.

The Court's examination of the tender issue begins by clarifying the pertinent statutory framework. The HOA lien statute, NRS § 116.3116, is grounded in the Uniform Common Interest Ownership Act, which Nevada adopted. *Id.* at 410. The statute gives an HOA a lien on homeowners' units/residences for, among other things, assessments the HOA levies against a unit/residence. *Id.* (referring to NRS § 116.3116(1)). "NRS § 116.3116(2) elevates the priority of the HOA lien over other liens[']" except for *inter alia* "[a] first security interest on the unit[/residence] recorded before the date on which the assessment sought to be enforced became delinquent." *Id.* As to a first DOT, NRS § 116.3116(2) splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. *Id.* at 411. The former, consisting of "the last nine months of unpaid HOA dues and

///

---

[6]The parties' arguments regarding SFR's status as a bona fide purchaser (*see, e.g.*, ECF No. 69 at 21–23; ECF No. 71 at 12) are moot because the HOA Sale extinguished the DOT.

maintenance and nuisance-abatement charges, is 'prior to' a first [DOT]." *Id.* The latter, "consisting of all other HOA fees or assessments, is subordinate to a first [DOT]." *Id.*

An HOA may initiate foreclosure by first notifying a homeowner of delinquent assessments. *Id.* Relevantly, for an HOA to "foreclose on a lien consisting of unpaid assessments that accrued after [the assessments on a previous lien were satisfied]," the HOA is required to issue a "new notice of delinquent assessment and notice of default." *Saticoy Bay LLC Series 6212 Lumber River v. Bank of Am., N.A.*, 430 P.3d 531 (Table), 2018 WL 6133938, at *1 n.1 (Nev. 2018) (citing *Property Plus Invs., LLC v. Mortg. Elec. Registration Sys.*, 401 P.3d 728, 731–32 (Nev. 2017) (observing that an HOA must restart the foreclosure process when a prior default has been cured))*; see also U.S. Bank Nat'l Ass'n as Tr. for Mortg. Loan Pass-Through Certificates, Series 2005-08 v. Heritage Estates Homeowners Ass'n*, No. 2:16-cv-01385-GMN-CWH, 2019 WL 346399, at *8 (D. Nev. Jan. 28, 2019) (citing *Prop. Plus Invs., LLC*, 401 P.3d at 730) ("[N]ew charges would not factor into an HOA's superpriority lien absent a new notice of delinquent assessments.").

Because HOA dues continue to accrue and the HOA retains a lien for those unpaid dues (*see* NRS § 116.3116(1)), full payment of assessments attached to a prior lien does not provide protection from subsequent foreclosure.

Additionally, the Nevada Supreme Court has made clear the law concerning tender. For example, in *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113 (Nev.), *as amended on denial of reh'g* (Nov. 13, 2018), the Nevada Supreme Court held "[a] valid tender of payment operates to discharge a lien or cure a default." *Id.* at 117, 121. And it reaffirmed "that the superpriority portion of an HOA lien includes only charges for maintenance and nuisance abatement, and nine months of unpaid assessments." *Id.* at 117. More recently, the Nevada Supreme Court held that an offer to pay the superpriority amount coupled with a rejection of that offer discharges the superpriority portion of the HOA's lien, even if no money changed hands. *See Bank of Am., N.A. v. Thomas Jessup, LLC Series VII ("Jessup")*, 435 P.3d 1217, 1218 (Nev. 2019). Even more recently, the

8

1 Ninth Circuit weighed in to confirm the Nevada Supreme Court had settled this issue—
2 "the holder of the first deed of trust can establish the superpriority of its interest by showing
3 that its tender satisfied the superpriority portion of the HOA's lien," which "consists of nine
4 months of unpaid HOA dues and any unpaid charges for maintenance and nuisance
5 abatement." *Bank of Am., N.A. v. Arlington W. Twilight Homeowners Ass'n*, 920 F.3d 620,
6 623 (9th Cir. 2019).

7 Accordingly, tender on a first notice of delinquent assessment cannot satisfy the
8 superpriority portion of an HOA's lien on a property for which a second foreclosure
9 proceeding has been initiated, based on newly accrued assessments, through the
10 issuance of a new notice of delinquent assessment lien.

11 Here, BoNYM argues that because in response to BANA's letter regarding the First
12 NDAL, Absolute represented there was no superpriority portion until BoNYM's foreclosure
13 and therefore would not accept a superiority payment, it was excuse from even tendering
14 a superpriority amount on the Second NDAL. (ECF No. 62 at 4.) BoNYM's position is that
15 the HOA Sale was intended to foreclose only on the subpriority portion of the lien. (*Id.* at
16 5–6.) SFR's response on the issue misses the mark, largely focusing on the letters
17 between BANA and Absolute and arguing that only full payment of the lien amount can
18 constitute tender to preserve a first DOT. (ECF No. 69 at 7–12.)

19 It is debatable whether Absolute's letter responding to BANA's inquiry amounts to
20 a rejection of a superpriority payment. (*See* ECF No. 62-7 at 6 (noting only that "I am
21 making you aware that it is our view that without the action of foreclosure, a 9 month
22 Statement of Account is *not valid*") (emphasis added).) In any event, the Court finds that
23 BoNYM fails to establish that it was excused from having to tender to preserve its DOT
24 considering the Second Foreclosure Proceedings. The Second Foreclosure Proceedings
25 were based on new unpaid assessments against the Property and nothing precluded
26 BANA from making tender of the superpriority amount, as it did for the First NDAL. The
27 exchanged letters concerning the First Foreclosure Proceedings is certainly not relevant
28 to the Second Foreclosure Proceedings.

BoNYM's argument that the HOA Sale was only intended to foreclose on the subpriority amount is also unpersuasive. This is because it is unclear whether an HOA can split its lien—even when the HOA unequivocally expressed such an intent. *See 7912 Limbwood Ct. Tr. v. Wells Fargo Bank, N.A.*, No. 2:13-CV-00506-APG, 2015 WL 5123317, at *2 (D. Nev. Aug. 31, 2015), *aff'd*, 707 F. App'x 479 (9th Cir. 2017). Thus, in the absence of evidence to the contrary, the Court assumes that HOA foreclosure sales are superpriority sales.

The Court concludes that BoNYM's DOT was not protected from extinguishment in the absence of a second attempt to tender or a rejection of a payment or offer to pay the superpriority amount relevant to the Second Foreclosure Proceedings.

### 2. Constitutionality

BoNYM next argues that the HOA Sale is invalid because the HOA foreclosed under NRS § 116.3116 which is facially unconstitutional based on *Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154 (9th Cir. 2016) and other cases. (ECF No. 62 at 6–10; ECF No. 71 at 8–11.) This Court has previously concluded that the facially unconstitutional position BoNYM takes here is unavailing. *See Bank of N.Y. Mellon v. Log Cabin Manor Homeowners Ass'n*, 362 F. Supp. 3d 930, 934–37 (D. Nev. 2019).

BoNYM additionally argues that NRS § 116.3116 is unconstitutional as applied because the pre-2015 version of NRS § 116.3116 did not require constitutionally adequate notice. (*Id.*) BoNYM's as applied argument particularly focuses on BoNYM's contention that its due process rights were violated because the HOA's notices did not provide the superpriority portion of the lien and the HOA "stopped" BoNYM from preserving the DOT by representing it 'recognize[d] . . . the first mortgage company as senior lien holder.' (ECF No. 62 at 9–10.) BoNYM further argues that the position that it could have paid the entire lien amount and recover a refund amounts to requiring it to pay (or do more) than necessary to protect its rights. (*Id.* at 10.) In response, SFR points out that (1) BoNYM does not actually allege that the HOA applied NRS § 116 in any unconstitutional way as to the timeframe relevant to HOA Sale—i.e., the Second Foreclosure Proceedings, and

10

(2) at best, BoNYM alleges that the HOA failed to specify the superpriority amount, but the notices was sufficient in providing the lien amount, and additionally provided how and where to pay it. (*See, e.g.*, ECF No. 69 at 18–19.)

The Court agrees with SFR that the HOA's representation that BoNYM notes here is irrelevant because it pertained to correspondence concerning the First Foreclosure Proceedings. The HOA's notices otherwise comported with due process as to BoNYM. *See Bank of N.Y. Mellon*, 362 F. Supp. 3d at 937 (internal quotations and citation omitted) ("[N]otice need not be an exhaustive guidebook to preserving one's interest. Rather, it must apprise interested parties of the pendency of the action."); *see also Bank of Am., N.A. v. 583SC LLC*, 408 P.3d 548 (Table) n.1, 2017 WL 6542454, at *1 n.1 (Nev. 2017) (noting that the lien comprised of monthly assessments was enough); *SFR I*, 334 P.3d at 418 (concluding that listing the entire amount due and owing at the time of recordation satisfied the requirement of reasonably calculated notice); *Shadow Wood Homeowners Ass'n v. New York Cmty. Bancorp. ("Shadow Wood")*, 366 P.3d 1105, 1114 (Nev. 2016) (recognizing various means at the disposal of the first security interest holder to determine the superiority amount: "attend the sale, request arbitration to determine the amount owed, or seek to enjoin the sale pending judicial determination of amount owed").

### 3. Equitable Relief

BoNYM alternatively argues that it is entitled to have the HOA Sale set-aside in equity under *Nationstar Mortg., LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon ("Shadow Canyon")*, 405 P.3d 641, 643, 648 (Nev. 2017). The Court declines to grant such relief.

In *Shadow Wood*, the Nevada Supreme Court held that "courts retain the power to grant equitable relief from a defective foreclosure sale." 366 P.3d at 1110. For instance, a court may set aside a sale where there is inadequacy of price as well as proof of slight evidence of fraud, unfairness, or oppression. *Shadow Canyon*, 405 P.3d at 643 (also stating inadequacy of price "should be considered with any alleged irregularities in the sale process to determine whether the sale was affected by fraud, unfairness, or oppression").

11

BoNYM contends the sale should be set aside because the sale price of $14,000.00 was inadequate and the sale was otherwise unfair or oppressive. (ECF No. 62 at 10–11.) BoNYM's unfairness argument is grounded on its position that the HOA represented that the foreclosure sale would not extinguish the DOT—i.e., the sale was only on the subpriority portion of the lien. (ECF No. 62 at 11.) SFR responds that the price was not grossly inadequate and that BoNYM has failed to demonstrate unfairness because the BoNYM had notice of the sale and nothing prevented the BoNYM from attending the HOA Sale or seeking the necessary information from the Borrower. (ECF No. at 19–21.)

Irrespective of the sale price, the Court concludes that BoNYM's reliance on the HOA's representation based on the First Foreclosure Proceedings is insufficient to demonstrate unfairness in the HOA Sale which was part of the Second Foreclosure Proceedings. The Court further agrees with SFR that even accepting the HOA's representation, that representation did not affirmatively prevent BoNYM from taking steps to protect its DOT. The Court therefore declines to exercise its equitable powers to set aside the HOA Sale.

In sum, the Court finds that the HOA Sale extinguished BoNYM's DOT and that BoNYM has not established that it is entitled to equitable relief under *Shadow Canyon*. The Court therefore grants SFR's MSJ on its counterclaims against BoNYM and Cross-Defendants[7] for quiet title/declaratory relief and on BoNYM's claims against it. BoNYM's MSJ is therefore denied. However, the Court dismisses, as moot, SFR's claim for preliminary and permanent injunction.

**V.     CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines

///

///

---

[7]The Court finds there is no genuine dispute that any interest Borrower and AHL held in the Property were extinguished by the HOA Sale.

that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Defendant/Counterclaimant SFR's motion for summary judgment (ECF No. 64) is granted. The Court grants summary judgment in favor of SFR on its counterclaims and on BoNYM's claims against it, and declares that the HOA Sale extinguished BoNYM's DOT and that SFR took title to the Property free and clear of BoNYM's DOT. The Court additionally declares that any interests Borrower and AHL held in the Property were also extinguished by the HOA Sale. Summary judgment is further granted in favor of the HOA—Arbor Park Community Association and the other Defendants on BoNYM's claims against them, except on the breach of contract claim against Borrower.[8]

It is further ordered that in light of the Court's ruling in favor of SFR that the HOA Sale extinguished the DOT, SFR's remaining claim for injunction is dismissed as moot.

It is further ordered that BoNYM's motion for summary judgment (ECF No. 62) is denied.

It is further ordered that the lis pendens BoNYM has in place (*see* ECF No. 3) is expunged.

It is further ordered that within 10 days of when this order is entered BoNYM must advise the Court whether it wishes to maintain its remaining claim for breach of contract against Borrower.

DATED *nunc pro tunc* THIS 30th day of May 2019.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

---

[8]Although the HOA and other Defendants did not move for summary judgment or respond to BoNYM's MSJ and the Clerk entered defaults against them, in light of the Court's findings on BoNYM's quiet title/declaratory relief claims the Court *sua sponte* grants summary judgment in favor of all Defendants on those claims, as alleged in the FAC. *See Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir. 2014) ("[W]here the party moving for summary judgment has had a full and fair opportunity to prove its case, but has not succeeded in doing so, a court may enter summary judgment *sua sponte* for the nonmoving party.").